United States Courts
Southern District of Texas
FILED

*May 21, 2024*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **Criminal No.** |
| **v.** | § | **4:24-cr-278** |
| | § | |
| **PATRICK CASSELLS,** | § | |
| | § | |
| **Defendant.** | § | |

## INFORMATION

The United States Attorney for the Southern District of Texas charges:

### General Allegations

At all times material to this Information, unless otherwise specified:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals who were sixty-five years of age or older, blind, or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

2.      Medicare was subdivided into multiple parts.  Medicare Part B covered, among other things, items and services supplied and provided by physicians, medical clinics, and durable medical equipment ("DME") suppliers, including office visits, minor surgical procedures, and DME, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

1

3.      Orthotic devices were a type of DME that included rigid and semi-rigid devices such as shoulder braces, knee braces, back braces, and wrist braces (collectively "orthotics" or "braces").

4.      Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries."  Each beneficiary was given a unique Medicare beneficiary identification ("MBI") number.

5.      DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers."  To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations.  If Medicare approved a provider's application, Medicare assigned the provider a unique Medicare "provider number."  A health care provider with a Medicare provider number could file true and accurate claims with Medicare to obtain reimbursement for medically necessary services rendered to beneficiaries.

6.      Enrolled providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement.  To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations. Providers were given online access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7.      Medicare reimbursed DME companies and other providers for services rendered to beneficiaries.  To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8.      To bill Medicare for services rendered, a provider submitted a claim form (Form 1500).  When a Form 1500 was submitted, usually in electronic form, the provider certified that

2

(1) the contents of the form were true, correct, and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

9.      A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique MBI number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

10.     A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary to the treatment of the beneficiary's illness or injury and prescribed by a physician who has conducted a needs assessment, evaluated, and/or treated the beneficiary.

**The Medicaid Program**

11.     The Medicaid Program ("Medicaid") was a state-administered health insurance program funded by the United States government and by the State of Texas. Medicaid helped pay for reasonable and necessary medical procedures, services, and items, such as physician services and DME, provided by qualified health care professionals to individuals who were deemed eligible under state low-income programs. Individuals who received benefits under Medicaid were referred to as Medicaid "recipients."

12.     Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

13.     The Texas Health and Human Services Commission ("HHSC") administered Medicaid in Texas. The State of Texas contracted with Texas Medicaid and Healthcare

3

Partnership ("TMHP") to administer Texas Medicaid on behalf of Texas HHSC.

14.     Medicaid in Texas paid a portion of a claim originally submitted to Medicare in the event the patient had both Medicare and Medicaid coverage.  This portion was generally a percentage of the amount Medicare allowed for the billed charge.  Such claims were automatically sent to Medicaid once processed by Medicare.  Medicaid paid its portion if Medicare originally allowed the claim.

## The Defendant and Related Companies

15.     Shalom and Shiloh Corporation ("Shalom & Shiloh") was a DME company doing business in the Southern District of Texas.

16.     Lonestar Meditex ("Lonestar Meditex") was a DME company doing business in the Southern District of Texas.

17.     National Health Medics Corporation ("National Health Medics") was a DME company doing business in the Southern District of Texas.

18.     Defendant **PATRICK CASSELLS**, a resident of Fort Bend County, Texas, owned and operated Lonestar Meditex and National Health Medics.  Although he was not listed on Shalom & Shiloh's documents filed with the Texas Secretary of State or Medicare, **PATRICK CASSELLS** was the true owner and operator of Shalom & Shiloh.

19.     Individual A was listed as the owner and manager of Shalom & Shiloh on Medicare enrollment documents, documents filed with the Texas Secretary of State, and other documents.

4

### COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

20.     The allegations in paragraphs 1 through 19 of this Information are realleged and incorporated by reference as though fully set forth herein.

21.     From in or around May 2020, and continuing through in or around January 2024, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**PATRICK CASSELLS,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with others, known and unknown to the United States Attorney, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

22.     It was a purpose of the conspiracy for the defendant, **PATRICK CASSELLS,** and his co-conspirators to unlawfully enrich themselves and others by, among other things: (1) paying kickbacks and bribes in exchange for completed prescriptions and other documents required to submit claims for braces ("doctors' orders") for Medicare beneficiaries and Medicaid recipients for braces that were medically unnecessary, ineligible for Medicare and Medicaid reimbursement, and/or not provided as represented; (2) submitting and causing the submission of false and fraudulent claims for health care benefits to Medicare and Medicaid; (3) concealing and

causing the concealment of false and fraudulent claims to Medicare and Medicaid; and (4)

diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to

further the fraud.

### Manner and Means of the Scheme

The manner and means by which the defendant, **PATRICK CASSELLS**, and his co-

conspirators sought to accomplish the purpose and object of the scheme included, among other

things, the following:

23.    **PATRICK CASSELLS** falsely certified to Medicare that he, as well as Lonestar

Meditex and National Health Medics, would comply with all Federal regulations and Federal

laws, including that they would not knowingly present or cause to be presented a false and

fraudulent claim for payment by Medicare and that they would comply with the Federal Anti-

Kickback Statute.

24.    **PATRICK CASSELLS** caused the submission of Medicare enrollment forms for

Shalom & Shiloh in which Individual A was listed as the sole owner and manager of Shalom &

Shiloh when, in truth, **PATRICK CASSELLS** was both an owner and manager of Shalom &

Shiloh.

25.    **PATRICK CASSELLS**, through Shalom & Shiloh, Lonestar Meditex, and

National Health Medics, entered into an agreement to purchase doctors' orders from his co-

conspirators.

26.    **PATRICK CASSELLS**, through Shalom & Shiloh, Lonestar Meditex, and

National Health Medics, paid illegal kickbacks and bribes to his co-conspirators in exchange for

the referral of doctors' orders.

27.    **PATRICK CASSELLS** and his co-conspirators disguised the fact that

**PATRICK CASSELLS** was purchasing doctors' orders by using sham invoices and contracts.

28.    Between in or around May 2020, and continuing through in or around October 2021, **PATRICK CASSELLS** and his-conspirators caused Shalom & Shiloh to submit to Medicare approximately $947,338 in false and fraudulent claims for DME that were procured through illegal kickbacks and bribes, were medically unnecessary, ineligible for reimbursement, and were otherwise not provided as represented.  Medicare paid Shalom & Shiloh approximately $482,791 on those claims.

29.    Between in or around August 2020, and continuing through in or around January 2024, **PATRICK CASSELLS** and his co-conspirators caused Lonestar Meditex to submit to Medicare approximately $20,618,042 in false and fraudulent claims for DME that were procured through illegal kickbacks and bribes, were medically unnecessary, ineligible for reimbursement, and were otherwise not provided as represented.  Medicare paid Lonestar Meditex approximately $9,537,899 on those claims.

30.    Between in or around March 2021, and continuing through in or around January 2024, **PATRICK CASSELLS** and his co-conspirators caused National Health Medics to submit to Medicare approximately $38,425,589 in false and fraudulent claims for DME that were procured through illegal kickbacks and bribes, were medically unnecessary, ineligible for reimbursement, or were otherwise not provided as represented. Medicare paid National Health Medics approximately $17,369,428 on those claims.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives the Defendant PATRICK K. CASSELLS notice that upon his conviction of a health care fraud offense, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offense, is subject to forfeiture.

### Property Subject to Forfeiture

The property subject to forfeiture includes, but is not limited to, the following property:

(a) 2017 Land Rover, VIN # SALGS5FE7HA333349;

(b) 2022 Mercedes-Benz, VIN # W1NYC7HJXNX451959;

(c) 2023 Mercedes-Benz, VIN # W1NYC7HJ7PX467653;

(d) 2023 Land Rover Defender, VIN # SALEJFEU0P2165989;

(e) 4909 Ricky Street in Houston, Texas, together with all improvements, buildings, structures and appurtenances, and legally described as follows:

> Lot Twenty-Eight (28), in Block J, of Bayou Estates, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 36, Page 47, of the Map Records of Harris County, Texas;

(f) 29034 Meadow Terrace Drive in Fulshear, Texas together with all improvements, buildings, structures and appurtenances, and legally described as follows:

> Lot 001, Block 01 of Creek Trace at Cross Creek Ranch, Section CT06, a subdivision in Cross Creek Ranch, Fort Bend County, Texas, according to the map or plat thereof recorded in Plat No. 20170232 of the Plat Records of Fort Bend County, Texas;

(g) 7812 Scott Street in Houston, Texas, together with all improvements, buildings, structures and appurtenances, and legally described as follows:

> Lot 14, Block 44, of Sunnyside Place, recorded in volume 458, page 422 of the Deed Records of Harris County, Texas;

(h) 4407 Trace Court in Fulshear, Texas, together with all improvements, buildings, structures and appurtenances, and legally described as follows:

> Lot 15, in Block 1 of Creek Trace at Cross Creek Ranch Section Five (5), a

subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Plat Number 20200099 of the Plat Records of Fort Bend County, Texas.

### Money Judgment and Substitute Assets

The Defendant is notified that upon conviction, the United States will seek a money judgment against him.  In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*/s/ Catherine Wagner*
Catherine Wagner
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Catherine.Wagner@usdoj.gov
(713) 567-9515